WESTERN DIS.
*Sept.* 1832.

ANDRUS ET AL.
*vs.*
THE TREASUR-
ER OF THE ꞌ
STATE.

---

### ANDRUS ET AL. *vs.* THE TREASURER OF THE STATE. ⸱

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

The sureties of a sheriff acquire no lien or mortgage on his real property, in consequence of his surety bond, whether it be recorded or not.

The state had no privilege or mortgage on the property of its collecting officers during the years 1826-7; or from the adoption of the Louisiana Code in 1825, until the passage of the act of            1830.

Where the state suspends its execution against its debtor, and gives further time to collect and pay over the taxes for which the debtor is a defaulter, at the instance of the sureties, they cannot claim to be exonerated on the ground of prolongation of time to the principal debtor.

This suit commenced by injunction, obtained by the plaintiffs therein, to enjoin two executions issued by the state treasurer in September, 1828, against B. S. Haw, late sheriff of the parish of St. Landry, and the plaintiffs who are his sureties, for the state taxes due by said parish, for the years 1826–7.

The first execution issued against Haw alone, for the taxes due in 1826, for which year he gave no surety bond. The second execution is against Haw and his sureties, for the sum of seven thousand nine hundred and forty-eight dollars seventy-five cents, the amount of state taxes due for the year 1827. For this year, a bond was given with the plaintiffs as sureties.

WESTERN DIS.
Sept. 1832.

ANDRUS ET AL.
vs.
THE TREASUR-
ER OF THE
STATE.

The sheriff was proceeding according to his instructions, to levy the first execution on all the property of Haw, which, after satisfaction, the residue of the proceeds of said property was to be applied to the second execution, in which the plaintiffs were bound as sureties. The property was insufficient to pay both demands. The plaintiffs obtained an injunction, in order to restrain the sheriff from applying the proceeds of any of Haw's property to the first execution, until the second one should be fully satisfied; also setting up other grounds of defence against any liability for Haw.

They further stated, that the property seized, consisted of land and slaves; and by an act of the legislature, passed March 27th, 1813, the amount of taxes collected by any sheriff, has the effect of a lien on all his real estate and lands; and, also, of his sureties, from the date of the bond given. That for the year 1826, Haw gave no bond; consequently the state has no lien on his estate for the taxes of that year; so that the lien or privilege resulting from the bond of 1827, is first entitled to be satisfied, before the state can resort to its claim for the taxes of 1826; and that the sureties have a right to require the enforcement of this law, if they are held liable for Haw's defalcation of 1827.

Several matters were set out in the defence, denying that the sureties were liable under the bond; that it was never legally executed, accepted, or approved by the state, nor recorded; and that the state granted a prolongation of time to Haw, and neglected to issue execution for one year after the taxes of 1827 became due, by which the securities are wholly exonerated. They further state, that the treasurer had no right by law, to issue an execution for the taxes of 1826, as there was no bond given for that year; they pray that the proceeds of the property seized for the taxes of 1826, be applied to the payment of the tax of 1827; that the injunction be perpetuated, and they discharged from all liability, &c.

The legislature, on a petition presented to it by the plaintiffs in December, 1828, passed a law suspending the treasurer's execution for the taxes of 1827, and directing the

property of Haw, seized under the one for the taxes of 1826, to be sold on a credit of one and two years; and allowing one year more to the plaintiffs, as Haw's sureties, to collect and pay into the treasury the taxes of 1827.

This act was immediately protested by the sureties, as granting a prolongation of time to Haw, without their consent, and contrary to the prayer of their petition to the legislature. Parole evidence was received to show the law was enacted in pursuance of the plaintiffs' petition, the original being lost.

The evidence shewed the bond was not recorded for the year 1827, but that it was duly executed, and the sheriff took the oath under it.

The counsel for the state treasurer pleaded the general issue; and set out the various grounds of the liability of the sureties; and prayed for the dissolution of the injunction, and the sale and proceeds of Haw's property to be applied to the first execution, and that he be permitted to proceed on his execution against the sureties.

There was judgement dissolving the injunction, and the plaintiffs appealed.

*Bowen* and *Brownson*, for the plaintiffs in injunction.

*Garland*, for the treasurer of the state and defendant in injunction:

1. The sureties of Haw are bound for the taxes of 1827. They signed his bond for that year; and in whatever manner persons bind themselves, so they shall remain bound. 2 *Martin, N. S.* 672, 681. 3 *Martin,* 569. 5 *Ibid.* 194. 1 *Pothier, no.* 56.

2. The bond is in full force. It was accepted, as appears by the parish judge's certificate, who also states it was approved by the justices of the peace. The bond itself put an end to the question that Haw was not duly appointed sheriff; it expressly admits him to be. 3 *Martin, N. S.* 589. 12 *Wheaton,* 64. 2 *L. Rep.*

3. The recording the bond would have given no lien or mortgage, to which the sureties might be subrogated, for the

WESTERN DIS.
   Sept. 1832.
───────────
ANDRUS ET AL.
     vs.
THE TREARU-
RER OF THE
   STATE.

state had no mortgage on the property of its collectors; they were in no worse situation by its not being recorded. *L. Code*, 3280. 8 *Martin, N. S.* 243, 316.

4. The plaintiffs, as sureties of Haw, have no right to say, that the money, made under the executions issued by the treasurer, shall be applied to the payment of the taxes of 1827, instead of those of 1826. Haw himself not having imputed the amount to that year's taxes, they cannot claim the power of imputing the sums made as they please. *L. Code*, 2159, 2162.

5. The act of the legislature, passed in December, 1829, on the petition of the sureties, is not a prolongation of the term of payment accorded to Haw, the principal debtor, within the meaning of the code, and does not in any manner interfere with the rights and remedy which the sureties might have had against their principal. *L. Code*, 3032. *Acts of 1829, p.* 6.

6. The plaintiffs availed themselves of the benefit of that act, especially the fourth section, and proceeded under it to collect the taxes then unpaid, as will appear by the testimony of the person appointed to collect them.

*Lewis*, for plaintiffs, in reply:

1. The act of the legislature, suspending the executions against Haw, was passed without the consent of the sureties. It operated a prolongation of the term of payment of the taxes of 1827, which released the sureties.

2. Parole evidence was improperly received to prove the contents of the petition to the legislature, by the sureties, for relief; because the loss of the original was not legally accounted for.

MATHEWS, J.:

In this case the plaintiffs obtained an injunction to stay proceedings on an execution issued by the defendant against

them and one Haw, who acted as sheriff for the parish of St. Landry, and in his capacity as such, was bound to collect the taxes of the state, assessed in said parish for the year 1827; and for the faithful performance of his duties, the plaintiffs were his sureties. The injunction was dissolved by a decree of the court below, and they appealed.

WESTERN DIS.
*Sept.* 1832.

ANDRUS ET AL.
*vs.*
THE TREASU-
RER OF THE
STATE.

The decision of the case is now reduced to a single question, and that is, whether the appellants are discharged from their liability to the state, in consequence of an act passed by the legislature, and approved on the fifth of December, 1828, by which the execution, issued against the sheriff and his sureties to enforce the payment of the taxes of 1827, was suspended.

It appears by the evidence of the case, that two executions were placed at the same time in the hands of the sheriff (successor in office of Haw), one for the taxes of 1826, and the other for the taxes of 1827. The state had no sureties of the sheriff to secure the payment of the taxes for the first year; in relation to those due, the plaintiffs were in no manner interested. Finding that their property was in danger of being sold under the execution of 1827, they made an application, by petition, to the legislature, to suspend that process. This petition is lost, and consequently it is impossible now to ascertain with precision what was prayed for.

The most important evidence adduced to establish the prayer of that instrument consists of a letter of L. Lesassier, addressed to John Moore, then a member of the legislature, and the testimony of the latter. Lesassier states explicitly, in his letter, that the object of the petition was to get a year for the collection of the taxes, and obtain time for the sale of the real property and slaves belonging to the sheriff, under the supposition that the sureties of Haw had some lien or tacit mortgage on the real estate of their principal, in consequence of the bond. I am of opinion that they had no such lien. The property of the sheriff being equally liable to be seized to pay the taxes of 1826, as those of 1827; and at that time the state itself had no privilege or lien on the property of its

The sureties of the sheriff acquire no lien or mortgage on his real property in consequence of his surety bond, whether it be recorded or not.

The state had no privilege or mortgage on the property of its collecting officers during the years 1826-7; or from the adoption of the

WESTERN DIS.
*Sept.* 1832.

ANDRUS ET AL.
*vs.*
THE TREASU-
RER OF THE
STATE.

Lou. Code, in
1825, until the
passage of the
act of — 1830. collecting officers. The petition of the sureties being lost, the whole requests contained in it cannot be known. It ought, however, to be presumed that they were reasonable, and such as had relation to the matters in which the petitioners were really interested. Their interest was involved in the collection of and payment of the taxes of 1827. In relation to those of 1826 they were not in any manner bound; consequently, could not justly interfere with the policy of the state, as to the means which the treasurer might be pursuing to effect the payment of the taxes of that year.

Moore, in his testimony, states, that the first and fourth sections of the act of the legislature conform to the request of the petitioners.

The law contains only four sections, and the two intermediate ones appear to me to relate to a subject in which the plaintiffs were very remotely, if at all interested. But these sections seem to conform to the views of the appellants, if we ascertain them from Lesassier's letter, which, in the absence of the petition, is certainly testimony in this regard not to be relied on. They wished Haw's real estate and slaves to be sold on a credit of one and two years, and these terms are granted by the act. The sales to be made under the execution for the taxes of 1826, and to be made by the sheriff.

It seems to me that it would have been very unreasonable in the plaintiffs to have asked the state to give up to them, Where the
state suspends
its execution
against its
debtor, and
gives further
time to collect
and pay over
the taxes for
which the
debtor is a de-
faulter, at the
instance of the
sureties, they
cannot claim
to be exonera-
ted on the
ground of pro-
longation of
time to the
principal debt-
or. as sureties for the taxes of 1827 (and for them alone), the property of the sheriff, seized to pay the taxes of the preceding year, for which the government had no security; and being unreasonable, I presume it was not requested.

I conclude, from the facts of the case, as they appear to me, that the execution against Haw, the sheriff, was suspended at the instance of the appellants, and consequently, they have no right to invoke in their favor the benefit accorded by law to sureties, when a creditor extends the time of payment to the principal debtor.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be affirmed, with costs.

MARTIN, J.:

This cause was argued at the last term, while indisposition prevented my attendance. There was a division of opinion between the two judges who attended, on one question only, *i. e.* whether the sureties were discharged by the state ordering the suspension of the execution which the treasurer had issued against the principal debtor? And this is the only question on which the case turns.

I have read the opinion which the senior judge is about to deliver, and concur with him in every part of it.

I deem it, however, proper to add that in my opinion the act of the general assembly suspending the sale of the original debtor's property, was not an extension of the time of payment. It was only a forbearance to enforce payment by legal means, without any agreement on the part of the state, to use all these means, during any particular period.

The general assembly might have on the following day ordered, or the very day of the passage of the act, have repealed it, and the sureties by payment into the treasury could at any time have acquired the right of directing the execution to be proceeded on.

The suspension was during the pleasure of the state, and the sureties, by payment to the treasurer, could have at any time of right *ipso facto* been subrogated to all the rights of the state as to the means of enforcing payment. The suspension was during the pleasure of the creditor, *i. e.* the creditor for the time being. Payment would have made the sureties creditors for the time being, and they might, therefore, have put an end immediately to the suspension.

This suspension did not impair the rights to the subrogation of which payment would have entitled them. It did not place them in a worse situation or inflict an injury on them, and, therefore, did not discharge them.

I think the injunction ought to be dissolved.

ANDRUS ET AL.
vs.
THE TREASU-
RER OF THE
STATE.

PORTER, J.:

The plaintiffs were sureties of one Haw, who was sheriff of the parish of St. Landry, and they have enjoined an execution which the defendant issued against them as such, for the balance due by the principal to the state, in his official capacity.

In their original, supplemental and amended petition, they set out various grounds why they are not responsible for him. All these grounds, with the exception of one, I consider untenable; and the view I have taken of that one renders a particular notice of the others unnecessary.

They say they are discharged because the state extended the legal time for the payment of taxes, without their consent.

By an act of the legislature, passed the fifth of December, 1828, it is enacted, that the treasurer of the state be and is hereby directed to suspend the execution issued from his department against B. S. Haw and his sureties, for taxes by him collected as sheriff of the parish of St. Landry, for the year 1827; and a term of one year was given to the sureties to collect the state taxes for that year and pay them into the treasury. See *Acts of the Legislature*, 1829, *p.* 8.

The plaintiffs contend, this act extended the term of payment to the sheriff, and deprived them of immediate recourse on him, had they discharged the debt.

The state answers, the law had no such effect, and if it had, it was passed on their solicitation, and at their request.

If consent was given by the plaintiffs to the act, it precludes the necessity of inquiring into the question, whether the term of payment was prolonged.

The petition which the sureties presented to the state, has been lost; but parole evidence was received in the court below, to prove its contents.

That evidence consists of the testimony of two witnesses; one of them a member of the legislature, to whom it was enclosed for presentation, and another who saw it before it

WESTERN DIS.
Sept. 1832.

ARDRUS ET AL.
vs.
THE TREASU-
RER OF THE
STATE.

was forwarded.　There was also introduced a letter from one of the sureties, to the witness first mentioned.

To understand properly this testimony, and make a correct application of it, it is necessary to state, that at the time the sureties drew up their petition to the legislature, and sent it on, there had issued from the treasury department two executions against the sheriff; one for the taxes for 1826, and the other for those of 1829; both these executions had come into the hands of the proper officer the same hour of the same day. The plaintiffs were under the impression, that as the sheriff had not given bond for the taxes of the year 1826, no lien existed on his property for the defalcation of that year, and that one did exist for what he might owe for the year 1827; and they required the law to be so worded, as not to impair any rights which the taxes of 1827 might confer on them.

The second section of the act, however, which has been already referred to, directed the treasurer of the state to proceed and sell the property of the sheriff for the payment of the taxes of 1826.　As soon as the sureties obtained a knowledge the statute was passed in this way, they went before a notary, and declared that it was not passed in conformity with their demand, and that they could not accept of its conditions in their favor, nor act under it.

The letter of the surety, enclosing the petition, among other things, says: "The securities contend that they have a preference on the land and slaves of Haw, by reason of the bond and its regular recording.　The object of the securities is to get a year for the collection of these taxes, and obtain time for the sale of the real property and slaves.　The law so worded, as not to impair any privilege or preference which the taxes of 1827 may have over those of 1826."

Moore, the member of the legislature to whom the petition was addressed, states that a law was drawn up pursuant to the sureties' request, but that the law as made, is not pursuant to their directions, and that he objected to it at the time.　The 1st and 4th sections are conformable thereto, but the second section, that which directs the property of Haw

WESTERN DIS
*Sept.* 1832.

ANDRUS ET AL.
*vs.*
THE TREASU-
RER OF THE
STATE.

to be sold for the taxes of 1826, is not.    They simply asked for time.

The other witness, Garland, thinks the petition was an application for time alone, and that they did not require a distribution of the funds which the sheriff might make on the executions in his hands.

The impression produced on my mind from this evidence, is, that the relief prayed for, was not granted as the sureties asked for it.    They required that the property seized for the taxes of 1827, should be sold for their payment.    It may be true, the act in no manner changed their legal rights; that a creditor who has levied on two executions, may impute the payment as he pleases; may suspend one and direct the other to proceed, and that the plaintiff had no mortgage on the land and slaves.    But the question is not, whether they were correct or not in their understanding of their rights, but whether they assented to the delay given in another condition, but that which their view of these rights induced them to ask?    I think they did not.    They might have made their consent depend on the state's surrendering a part of its legal preferences.    The application would have been absurd, but it is not less true, that unless their demand had been complied with, their assent would not have been given to an extension of time on any other conditions; and a prolongation of the term, says our law, granted to the principal debtor without the consent of the surety, operates a discharge of the latter.    *La. Code*, 3032.

There is next to be examined, whether a law merely suspending the execution, was a prolongation of the term of payment.    In the consideration of this question, I think little aid can be derived from an examination of the consequences which would result from a similar act on the part of an individual creditor; in regard to him, perhaps, the sureties would not be discharged; because by the mere act of suspension, he had done no act which he could not at any moment recal, and consequently, those bound with the debtor, on paying the creditor, could instantly have exercised the right which

he retained, and at once enforced their claims. But after the legislature adjourned, no officer of the government could issue execution; the right of recovery was suspended until another meeting of that body; the sureties by paying to the treasurer, could acquire a greater right than he had; and it is not seen how this act of the legislature, which prevented all means of enforcing the claim for the space of time which intervened between its sittings, can be distinguished from that of an ordinary creditor, who would tie up his hands by a prolongation of the term for the same space of time.

In relation to the consequence of giving time without the consent of the surety, I have considered the case precisely as if the state of Louisiana was an individual, for I understand her rights in matters of this kind, are neither greater or less. There is no single principle of a free constitutional govern- ment, which more challenges applause, or brings with it more advantages to the citizen, than that which makes society in its collective capacity, bound by those laws which it enacts for the direction of each individual composing it, and compels the sovereign power to be just from necessity, rather than from election.

I am, therefore, of opinion, the judgement of the court below should be reversed, and the injunction made perpetual.